251 N.J. Super. 236 (1991)
597 A.2d 1091
CITIBANK, N.A., PLAINTIFF-RESPONDENT,
v.
ANTHONY ERRICO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 16, 1991.
Decided October 16, 1991.
*238 Before Judges PETRELLA, ASHBEY and A.M. STEIN.
Hellring Lindeman Goldstein & Siegal, attorneys for appellant (Richard B. Honig and Matthew E. Moloshok, on the brief).
*239 Friedman Siegelbaum, attorneys for respondent (Joel R. Glucksman and Lindsey H. Taylor, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Defendant Anthony Errico appeals from a September 11, 1990 order granting plaintiff Citibank N.A. (Citibank) summary judgment and entering a deficiency judgment of $2,601,149.08 as of August 3, 1990. The deficiency proceeding was instituted against Errico after foreclosure of a mortgage and security agreement which he and others had given to the bank in connection with a one year loan of $5,500,000. Errico's cross-motion for summary judgment dismissing the deficiency action was denied by the Law Division in the same order.
The underlying dispute between the parties arose out of the foreclosure of a mortgage and note on property known as Harbor Island Spa (the Spa) in Long Branch, New Jersey.
The facts are neither complicated nor disputed. On February 11, 1986, Errico, along with Ahmed Elsaid and Karim Elsaid (the Elsaids) executed a $5,500,000 note in favor of plaintiff Citibank secured by a first mortgage against the Spa, as well as mortgages against other properties (two in Hudson County and one in Monmouth County). Citibank was to be paid monthly interest at a rate of Citibank's prime rate plus .05%, with a balloon payment due on February 11, 1987.
The Mortgage Note and Security Agreement contained the following choice of law provisions:
This note is made and delivered in the Borough of Manhattan, City, County and State of New York, where all advances and repayments shall be made. The Maker agrees that this Note shall be construed in accordance with and governed by the laws of said State.
36.... this Mortgage, the Note and all other instruments, bearing even date herewith, in connection with the loan evidenced by the Note, have been executed and delivered in the Borough of Manhattan, City, County and State of New York. This Mortgage, the Note and said other instruments shall, in all respects, be governed, construed, applied and enforced in accordance with the *240 laws of the said State, except as to matters affecting title to Premises which shall be governed by the applicable laws of the State of New Jersey.
Citibank instituted foreclosure proceedings in the Chancery Division, Monmouth County, against Errico as well as the Elsaids on the mortgage when the parties failed to make the balloon payment on the maturity date. A judgment was entered in the foreclosure action and the sale of the Spa was ordered. However, the sale was stayed by the filing of a bankruptcy petition by the Elsaids. The stay was vacated by consent order of April 18, 1989 which also established that Citibank was entitled to $7,100,000 plus interest, fees and costs payable from the proceeds of the foreclosure sale. That order further provided that Errico and the Elsaids were not precluded from contesting the interest rate used by Citibank, and that Errico, as a second mortgagee, did not waive his right to object to confirmation of the sale.
A fair market value appraisal of the property was prepared in connection with the bankruptcy proceedings by Citibank's expert, Cushman & Wakefield, Inc., which indicated that as of February 3, 1989, the Spa's fair market value was $9,500,000. The Spa was sold at public auction on May 24, 1989, pursuant to the bankruptcy court order, to Citibank, the only bidder at the auction, for $5,900,000. Errico did not object to the auction price.[1]
Citibank then sued in the Law Division seeking a deficiency judgment against Errico in the amount of $1,769,153.17.[2] Errico moved to dismiss the complaint under R. 4:6-2(e), asserting a failure to state a claim upon which relief can be granted, and alleging that pursuant to New York law, which he asserted governed the transaction, no deficiency existed because he was *241 entitled to a $9.5 million credit for the fair market value of the property based on Citibank's own appraisal. After his motion to dismiss was denied on May 10, 1990, Errico filed an answer and demand for jury trial which contained an affirmative defense that no deficiency existed because the Spa's fair market value exceeded the debt claimed under the mortgage note.
Subsequently, Citibank moved for summary judgment arguing that (1) under N.J.S.A. 2A:50-3 Errico was not entitled to a fair market value credit in a commercial transaction; and (2) Errico's failure to object to the foreclosure sale price precluded him from claiming the fair market value credit. Errico cross-moved for summary judgment, alleging that New York law governed the deficiency proceeding based upon the choice of law provisions contained in the mortgage and note. In particular, Errico argued that New York's Real Property Actions and Proceedings Law (RPAPL) § 1371, subdivision 2, requires that when calculating a deficiency judgment, the debtor shall be credited with the higher of the fair market value as determined by the court, or the sale price. Thus, Errico claimed entitlement to a credit of $9,500,000, the appraised value of the Spa established for Citibank just three months prior to the foreclosure sale.
Citibank argued that New York's RPAPL provision is a procedural rule which is inapplicable to foreclosure and deficiency actions brought outside the State of New York, and that under general conflicts of law principles, New Jersey law governs the procedural aspects of the deficiency judgment proceeding.
After argument on the motions, summary judgment was entered in favor of Citibank. The judge's brief oral opinion addressed only the issue of which law governed the deficiency proceeding. Without distinguishing between the foreclosure action and the deficiency action, he concluded that New Jersey *242 law should apply because the property and foreclosure were in New Jersey.[3]
The summary judgment order from which Errico now appeals was entered on September 11, 1990. On Errico's request, execution and levy upon the judgment were stayed pending appeal, subject to certain conditions.
Because the mortgage and note specifically provided that New York law was to govern the financing transaction, but not title matters, Errico relies on the deficiency judgment provisions in RPAPL § 1371, subdivision 2, which states:
Such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus the amount owing on all prior liens and encumbrances with interest, plus costs and disbursements of the action including the referee's fee and disbursements, less the market value as determined by the court or the sale price of the property whichever shall be the higher. (Emphasis added)
Citibank contends that the New York fair market value credit provisions (sometimes referred to as the anti-deficiency provisions) is procedural, and, thus does not apply under conflicts of law principles, in a New Jersey forum. It also contends that regardless of the "substantive" or "procedural" designation, the New York legislature did not intend for RPAPL § 1371 to apply to property located outside of New York.
The determination of whether a fair market value credit is substantive or procedural is generally accomplished in accordance with the law of the forum state, here New Jersey. See H. Goodrich & F. Scoles, Conflict of Laws, § 81 (4th ed. 1964). Light v. Granatell, 171 N.J. Super. 557, 410 A.2d 266 (App.Div. 1979), does not support Citibank's argument that RPAPL § 1371, subdivision 2, is procedural, rather than substantive. Light only considered RPAPL § 1301, which was intended to *243 prevent multiplicity of suits on the same debt, and concluded that that section was procedural. Section 1371 deals with the extent of a debtor's liability, a substantive right, rather than how a creditor is to proceed in enforcing liability, the procedural aspect. We find persuasive the language in Gate City Federal Savings & Loan Ass'n v. O'Connor, 410 N.W.2d 448, 450 (Minn. Ct. App. 1987), which held a fair market value credit statute to be substantive:
A law is substantive if it will substantially affect the result. See Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945). If North Dakota's law on deficiency judgments applies, the O'Connors may incur either no judgment, or a larger or smaller one. If Minnesota law applies, there is a certain, relatively large deficiency judgment. Since the respective deficiency judgment laws are significantly different and application of the statute will substantially affect the result, we hold that deficiency judgments are matters of substantive law. [410 N.W.2d at 450] (Emphasis added).
We consider the New York law deficiency provisions to be substantive, but in any event even if they were procedural, there is no bar to the parties agreeing to apply the New York deficiency provisions to the non-title aspects of the financing arrangements. Simply stated, there is no impediment to applying a contractual choice of substantive law provision as long as the public policy of the forum state is not violated. Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc., 196 N.J. Super. 16, 481 A.2d 553 (App.Div. 1984), aff'd o.b. 98 N.J. 266, 486 A.2d 334 (1985); Crinnion v. The Great Atlantic-Pacific Tea Co., 156 N.J. Super. 479, 384 A.2d 159 (App.Div. 1978); Knollmeyer v. Rudco Industries, Inc., 154 N.J. Super. 309, 381 A.2d 378 (App.Div. 1977), certif. denied 77 N.J. 477, 391 A.2d 492 (1978). Thus, the parties may expressly provide that the validity and interpretation of the mortgage and note are governed by the substantive laws of a state other than New Jersey.
Citibank argues that to apply the anti-deficiency provisions of the New York statute would be against the public *244 policy of this State because N.J.S.A. 2A:50-2.3(a), as amended,[4] contains a provision which exempts mortgage notes used in connection with mortgages for most business or commercial purposes from New Jersey's fair market value credit provision.
New Jersey's law now generally equates notes and bonds for the order of proceedings to collect a debt secured by a mortgage. N.J.S.A. 2A:50-2. It requires that in calculating a deficiency judgment a debtor shall be credited with the fair market value of the property. As a part of that law N.J.S.A. 2A:50-3 provides:
The obligor in any bond or note specified in section 2A:50-2 of this Title, with respect to any bond given after March 29, 1933, and with respect to any note given after the effective date of this amendatory act may file an answer in the action for deficiency, disputing the amount of the deficiency sued for. In that event both parties may introduce evidence as to the fair market value of the mortgaged premises at the time of the sale thereof in the foreclosure action, and the court, with or without a jury, shall determine the amount of such deficiency, by deducting from the debt secured the amount determined as the fair market value of the premises. If all parties to the action shall so agree, the court may accept as the fair market value of the mortgaged premises the value fixed by three appraisers, to be named by agreement of all the parties to the action, which agreement shall be evidenced by a stipulation to be filed in the action. (Emphasis added)
N.J.S.A. 2A:50-2.3 provides:
This act shall not apply to proceedings to collect a debt evidenced by a note and secured by a mortgage on real property in the following instances:
a. Where the debt secured is for a business or commercial purpose other than a two-family, three-family or four-family residence in which the owner or his immediate family resides;
b. Where the mortgaged property is other than a one-family, two-family, three-family or four-family dwelling in which the owner or his immediate family resides at the time of institution of proceedings to collect the debt;
c. Where a banking institution, savings and loan association or building and loan association, operating pursuant to State or Federal law, is the lender or his *245 assignee and the mortgage is not the primary security for the debt, as evidenced by (1) the financial condition of one or more persons directly or indirectly liable on the note, or (2) the giving of collateral in addition to the mortgage as security for the debt;
d. Where a banking institution, savings and loan association, building and loan association or licensed secondary mortgage lender, operating pursuant to State or Federal law, is the lender, and the mortgage is given to secure payment of a loan evidenced by a note, and where the mortgage so given is subject to the lien or liens of a prior mortgage or mortgages not held by such institution or association or by any holder in which such institution or association has an interest or with which such institution or association has an affiliation. (Emphasis added).
Errico argues that New Jersey law requires the court to consider fair market value in determining whether to grant the deficiency judgment, and that the statutory exception for commercial or business property does not preclude that result. Thus, Errico argues that we should conclude that the trial judge should have found that the Spa's fair market value exceeded and extinguished the personal debt based on Citibank's own appraisal, which reflected a fair market value in excess of the personal debt.
The enactment of Laws of 1979, chapter 286, was intended to eliminate the difference in treatment between bonds and notes secured by real estate mortgages so that a creditor would first have to look to the property in satisfaction of the debt, before personal liability was sought to be enforced on personal guarantees. See Central Penn National Bank v. Stonebridge, Ltd., 185 N.J. Super. 289, 304, 448 A.2d 498 (Ch.Div. 1982), and N.J.S.A. 2A:50-2. In Central Penn National Bank, the court did not limit the fair market value credit to residential property, but, in the case of a corporate debtor, imposed conditions, including a condition that "in the event of a suit for a deficiency, and upon objection to the sale of the mortgaged premises, defendants be permitted ... a fair market value hearing under the equitable deficiency proceedings pursuant to 79-83 Thirteenth Avenue v. DeMarco [44 N.J. 525, 210 A.2d 401 (1965)]...." 185 N.J. Super. at 312, 448 A.2d 498. The Chancery Division judge considered the fact that the secured debt in *246 the matter before him was for business or commercial purposes and fell within the exception of N.J.S.A. 2A:50-2.3(a) and (b). Id. at 304, 448 A.2d 498.
The judge in Central Penn National Bank clearly did not consider that the application of equitable principles in resolving that case conflicted in any way with the statute. Nor do we find any violation of public policy here in allowing the parties to contract for the application of New York law. The exceptions in N.J.S.A. 2A:50-2.3 do not create the type of policy statement that precludes private agreements. This statute merely declares the extent to which the Legislature was able to agree on equating mortgage bonds and notes at that time.
The argument raised by Citibank that the New York legislature did not intend for its deficiency statute to operate extraterritorially is a make-weight argument under these circumstances. Under our federal-state system no state purports to enact any legislation to operate extraterritorially, unless there is a legislatively sanctioned compact with another state or states or, perhaps, a uniform act. Citibank's argument is without merit where parties contract to be bound by a law that has a reasonable nexus to the transaction.
The case before us differs markedly from Key Bank of Alaska v. Donnels, 106 Nev. 49, 787 P.2d 382 (1990), which we do not find persuasive in any event. There, the Alaska statute's anti-deficiency language was specifically limited to Alaska land. The parties had contractually agreed in the mortgage note that Alaska law would govern. However, they agreed in the deed of trust (the counterpart of a mortgage) that they would be governed by Nevada law, thus setting up a conflict. Under those circumstances, the court declined to apply Alaska's anti-deficiency statute.
Even in the absence of the contractual provision applying New York law, Citibank's argument that there is no entitlement to a fair market value credit in a deficiency action in New Jersey on a note where business or commercial property is *247 involved is not a correct statement of our law. Although N.J.S.A. 2A:50-2.3 was amended to exempt mortgages secured by notes for business and commercial properties from the fair market credit provision, we find nothing which precludes a court from applying equitable principles to impose a fair market value credit to prevent a windfall or where circumstances require equitable relief in the interests of justice. See Hudson City Savings Bank v. Hampton Gardens, Ltd., 88 N.J. 16, 438 A.2d 323 (1981); 79-83 Thirteenth Avenue v. DeMarco, 44 N.J. 525, 210 A.2d 401 (1965), and Morsemere Federal Savings & Loan Ass'n v. Nicolau, 206 N.J. Super. 637, 503 A.2d 392 (App.Div. 1986). As we have noted, the Chancery Division applied equitable principles in conditioning relief on a fair market value hearing in Central Penn National Bank v. Stonebridge, Ltd., supra (185 N.J. Super. at 311, 448 A.2d 498). An equity court has the inherent power to prevent a potential double recovery or windfall to a judgment creditor. Morsemere Federal Savings & Loan Ass'n, supra (206 N.J. Super. at 645, 503 A.2d 392). Morsemere recognized that the court has equitable powers to mold relief. Although the deficiency suit here was instituted in the Law Division, rather than the Chancery Division, under our constitution each court has the ability to fashion equitable remedies. N.J. Const. of 1947, art. VI, § 3, para. 4; Wojcek v. Pollock, 97 N.J. Super. 319, 325, 235 A.2d 58 (Law Div. 1967). See also Winberry v. Salisbury, 5 N.J. 240, 247, 74 A.2d 406 (1950). We also note that the property involved in 79-83 Thirteenth Avenue Ltd. v. DeMarco, supra (44 N.J. 525, 210 A.2d 401) (a case decided before the amendments to the deficiency statutes), was commercial property but nonetheless, the court noted the inherent unfairness of the situation and applied traditional equitable principles. Such principles were also followed in Central Penn National Bank, decided after the amendments, which likewise involved business property. This analysis is particularly apt where the evidence of the security value being in excess of the debt was derived not from the debtor, but from the creditor.
*248 We conclude that, in accordance with the agreement by the parties in the note and mortgage, New York law applies to the deficiency claim, and that alternatively, under the circumstances here, New Jersey law allows a deficiency hearing to preclude a windfall under general equitable principles. Accordingly, we remand for a deficiency hearing at which the fair market value of the property at the time of foreclosure sale shall be determined and the calculation of any credit to be allowed defendant in the deficiency action.
We reject Citibank's contention that Errico is precluded under the entire controversy doctrine from claiming a fair market value credit because he failed to object to the sale price in the bankruptcy court, as permitted by the bankruptcy court order. In the first place, a debtor is not required to object to a foreclosure sale price as a prerequisite for claiming a fair market value credit in a deficiency suit under N.J.S.A. 2A:50-3. McCloskey v. M.P.J. Co., 85 N.J. Super. 573, 575, 205 A.2d 469 (Law Div. 1964). Although the foreclosure judgment sets the amount due on the debt and may be res judicata among the parties, it is not determinative as to the debtor's liability for a deficiency in a separate suit. See Central Penn National Bank v. Stonebridge, Ltd., supra (185 N.J. Super. at 302, 448 A.2d 498). A claim that no personal liability exists, e.g., that the fair market value of the property exceeds the mortgage debt, is a personal defense which is properly asserted in the deficiency action. See N.J.S.A. 2A:50-3. To assert it in a foreclosure proceeding would be premature. Central Penn National Bank, supra (185 N.J. Super. at 310, 448 A.2d 498). In addition, although the bankruptcy court ordered sale of the Spa, it did not have exclusive jurisdiction over the property and certainly did not have jurisdiction in the deficiency suit instituted by Citibank against Errico. See 28 U.S.C.A. § 1334(b); Matter of Lemco Gypsum, Inc., 910 F.2d 784, 788 (11th Cir.1990). In our view, the deficiency claim is independent of the bankruptcy proceeding for entire controversy doctrine purposes.
*249 Likewise, a defense to personal liability on the note by virtue of a claimed fair market value credit is not germane to either the foreclosure action or the bankruptcy matter. The entire controversy doctrine does not bar Errico's claim here. See Ayers v. Jackson Tp., 202 N.J. Super. 106, 493 A.2d 1314 (App.Div. 1985), mod. 106 N.J. 557, 525 A.2d 287 (1987); Zaromb v. Borucka, 166 N.J. Super. 22, 398 A.2d 1308 (App.Div. 1979). Since the deficiency cause of action did not accrue until after the foreclosure proceeding, and until the property was sold for less than the amount owed on the note, there can be no bar by virtue of the entire controversy doctrine. Indeed, it might equally be argued that if Errico were barred by the entire controversy doctrine, Citibank's own deficiency claim would be barred because it had not been asserted in the foreclosure action. Obviously, neither party is barred because the involved claims could not have been presented earlier. See Viviano v. CBS, Inc. 251 N.J. Super. 113, 128-129, 597 A.2d 543, 551 (App.Div. 1991).
Errico also argues that Citibank's "wholly conclusory affidavit as to the balance allegedly due under the Note," without any supporting documents or computations, does not suffice to establish the amount due. The affidavit submitted by Citibank states that as of April 1, 1990, it was entitled to a $2,345,409 deficiency judgment. We recognize that the issue was not raised below, and hence need not be considered by us. See Nieder v. Royal Indemn. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). Nevertheless, because of the circumstances here, where Citibank submitted a fair market value appraisal which exceeded the amount due on the mortgage, and the deficiency action was decided on a motion for summary judgment which addressed only the issue of which law governed and not the amount due or the deficiency procedure itself, the interests of justice are best served by remanding for a hearing to determine the amount of the deficiency, if any.
Because it was not a question of allowing the debtor to file an answer under N.J.S.A. 2A:50-3 to dispute the amount due in *250 the deficiency action, but merely allowing the debtor to use the creditor's own appraisal figures, no delay or extended hearing is required. On a remand Citibank must prove the amount due and the parties may agree to an appraisal procedure, perhaps with the designation of three appraisers, as set forth in N.J.S.A. 2A:50-3, to determine the value of the security in the creditor's hands so that there may be an expeditious determination of any deficiency.
In light of our determination we need not address Errico's contention that Citibank should be estopped from arguing that New York law applies because its pleadings and briefs filed in the foreclosure action sought the application of New York law.
We reverse the order granting summary judgment and remand for a hearing to determine the amount of the deficiency, if any, and the allowance of a fair market credit under equitable principles to the extent that the fair market value at the time of the foreclosure sale exceeded the price for which the property was bid in by Citibank.
NOTES
[1] We are informed that the other three properties subject to the mortgage were of insufficient equity to yield a monetary return to Citibank and were not foreclosed.
[2] The deficiency complaint was originally filed in Passaic County. By consent order of September 13, 1989, venue was changed to Bergen County.
[3] Errico argues that the judge failed to make sufficient findings and conclusions under R. 1:7-4. Respondent in effect acknowledges this, but urges us to nonetheless decide the case on the record and the law.
[4] L. 1979, c. 286 § 13, effective May 1, 1980, amended by L. 1981, c. 333 § 1, effective December 14, 1981. Although not argued in this case, subsections b and c could also be applicable. Indeed, this section as written would appear to run counter to the purpose of the amendments by N.J.S.A. 2A:50-2 and 3 which purported to treat mortgages secured by notes the same as those secured by bonds. See Central Penn National Bank of Stonebridge, Ltd., 185 N.J. Super. 289, 304, 448 A.2d 498 (Ch.Div. 1982).