271 N.J. Super. 56 (1993)
637 A.2d 1297
RESOLUTION TRUST CORPORATION, CONSERVATOR FOR PROSPECT PARK FEDERAL SAVINGS BANK, PLAINTIFF,
v.
BERMAN INDUSTRIES, INC., MICHAEL J. BERMAN AND ALAN D. DAVIS, DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County.
Decided October 28, 1993.
*59 Hope M. Pomerantz for plaintiff (Williams, Caliri, Miller & Otley, attorneys; Cheryl H. Burstein, on the brief).
Peter R. Bray for defendants (Bray, Chiocca, Rappaport & Rothstandt, attorneys).
DeLUCCIA, J.S.C.
In this case, the court is called upon to determine whether a guarantor of a promissory note simultaneously executed with a mortgage loan on commercial or business property is entitled to a "fair market value hearing" in a deficiency suit instituted by the mortgagee after foreclosure and sheriff's sale. The issue is before the court by way of a motion for summary judgment filed by plaintiff and a cross-motion filed by defendant Alan B. Davis ("Davis"), one of the two guarantors.
The controversy developed as follows: on November 30, 1987, Prospect Park Savings Bank, SLA ("Prospect Park SLA") extended a loan to Berman Industries, Inc. ("Berman Industries") in the amount of $400,000. The proceeds of the loan were to be applied against all or a portion of the purchase price of a certain parcel of commercial property situated in Paterson, New Jersey. The loan was evidenced by an adjustable rate note, which note was executed by Michael J. Berman ("Berman") as president and Davis as secretary of Berman Industries. The loan was also secured by a first purchase money mortgage given by Berman Industries to Prospect Park SLA. Simultaneously, both Berman and Davis individually executed guarantees of the corporate obligations of Berman Industries.
It appears that the expectations of defendants collided with unspecified economic realities, resulting in a default by Berman *60 Industries on its obligations under the note and mortgage. None of the defendants made any payments on the note between August 1, 1989, and December 1, 1992, its date of maturation. In accordance with the terms of the note and guarantee, the entire unpaid balance was declared due and owing.
Apparently, however, defendants were not alone in suffering a reversal of fortune. On or about April 19, 1991, Prospect Park SLA was determined to be insolvent. The Resolution Trust Corporation ("RTC") was appointed receiver of the bank pursuant to federal law. As receiver, the RTC was granted a charter for a new federal mutual association named Prospect Park Federal Savings Bank ("Prospect Park Federal"). Pursuant to the United States Code, the RTC was designated conservator of Prospect Park Federal. See 12 U.S.C.A. § 1464(d)(2)(B).
As receiver for Prospect Park SLA, the RTC entered into a purchase and assumption agreement with Prospect Park Federal, acquiring certain assets and assuming certain liabilities of the insolvent institution. Included in the inventory of assets and liabilities so acquired were the note and guarantee which are the subject of this litigation. The RTC demanded payment on the aforementioned obligations from the defendants, which demand was not honored. Thereafter, Prospect Park Federal commenced a foreclosure action in the Chancery Division which resulted in the acquisition of the subject property by the RTC at a sheriff's sale on January 7, 1992. The bid price was $100. Prior to the sale, the RTC received an appraisal of the property dated September 10, 1991, which reflected a market value of $375,000. Davis and Berman were apparently not joined as defendants in the foreclosure action.
Subsequently, the RTC as conservator for Prospect Park Federal commenced this deficiency action in the Law Division against Berman Industries, Berman and Davis. Berman Industries has defaulted, and Berman has sought refuge under the Bankruptcy Code, leaving Davis as the only viable defendant.
*61 The RTC claims that as of July 18, 1993, defendants' indebtedness amounted to $639,738.88. This sum reflects $390,351.20 in principal, $179,240.41 in interest, and $70,147.27 in advances made to preserve collateral. Obviously, this obligation has increased since the motions were filed.
Davis raises various defenses to the RTC's deficiency suit. Included are the following: failure of consideration, failure to join Davis in the foreclosure proceedings, application of the entire controversy doctrine to bar the action, and entitlement to a fair market value hearing. However, for the purposes of adjudication of this motion, none of the proffered defenses are found to be meritorious, except for the claim of an entitlement to a fair market value hearing.
Although Davis has complied with the requirements of R. 4:5-4, setting forth affirmative defenses in his answer, he failed to address these issues in his response to the RTC's motion. Strategically, Davis appears to pursue only the claim of a right to a fair market value hearing treating the remaining defenses as pro forma. Davis's failure to advance legal argument in support of his separate defenses notwithstanding, a complete adjudication of the motion requires each to be addressed.
Davis's first separate defense alleges a failure of consideration. This contention is meritless. The note provides, in pertinent part, as follows:
In consideration of the extended credit by Prospect Park Savings and Loan Association, herein referred to as "the Association," to Berman Industries, Inc., referred to as "the borrower," the Undersigned does hereby and expressly guarantee the payment, when due, of all indebtedness, presently existing and hereafter arising of the Borrower to the Association.
The loan and the guarantee were created simultaneously. Consequently, there was no failure of consideration. See Public Loan Co. v. Federal Deposit Insurance Corp., 803 F.2d 82, 85 (3rd Cir.1986).
Furthermore, even if this defense were deemed meritorious, it is unavailable to Davis. As a matter of federal common *62 law, the RTC was afforded "holder in due course" status when it acquired the notes, mortgages and guarantees through the purchase and assumption agreement with Prospect Park Federal. As receiver of Prospect Park SLA, the RTC took the note, mortgage and guarantee free from all "personal" defenses, including failure of consideration. See Resolution Trust v. Associated Gulf, 263 N.J. Super. 332, 347-48, 622 A.2d 1324 (App. Div. 1993). Accordingly, Davis's first separate defense is legally insufficient to defeat plaintiff's motion for summary judgment.
Davis's second separate defense asserts that the failure to join Davis in the foreclosure proceedings is a bar to this action. Davis apparently predicates this defense upon N.J.S.A. 2A:50-22. His reliance upon this statute is misplaced. This section has been judicially recognized as applicable only to situations involving the assumption of notes and bonds and mortgages as opposed to actions upon the original obligations. See Central Penn Nat'l. Bank v. Stonebridge, Ltd., 185 N.J. Super. 289, 307, 448 A.2d 498 (Ch.Div. 1982). In the present case, the note and mortgage given by Berman Industries to Prospect Park SLA represent the original indebtedness and security.
Furthermore, N.J.S.A. 2A:50-2 is also inapplicable. The guarantee given by Davis was in connection with a loan advanced for commercial or business purposes. Consequently, the exception to the so-called "foreclosure first requirement" found in N.J.S.A. 2A:50-2.3(a) and (b) applies. Id. at 305, 448 A.2d 498. Accordingly, this defense is revealed to be meritless.
Davis's fourth separate defense asserts the entire controversy doctrine as a bar to the litigation. Rule 4:64-5 specifically precludes the joinder of non-germaine claims, such as those arising under guarantees, in proceedings for the foreclosure of mortgages. A foreclosure action is purely quasi in rem, affording relief only against the secured property. A suit on the bond or note, however, is in personam. A foreclosure judgment is res judicata as to the amount of the unpaid obligation secured by the mortgage, but not as to an obligor's liability for any deficiencies. See *63 Central Penn Nat'l. Bank v. Stonebridge, Ltd., supra, 185 N.J. Super. at 302, 448 A.2d 498. Accordingly, there is no legal basis upon which this defense may be legitimately asserted.
However, a different conclusion is reached with respect to Davis's third separate defense. Davis contends that plaintiff's claim for damages should be barred if the fair market value of the mortgaged premises exceeds the amount claimed due in the deficiency proceeding. He asserts a right to a hearing before judgment to determine the market value of the property at the time of the sheriff's sale.
As to Davis's claim of an entitlement to a fair market value hearing, the RTC's position is succinct: he is not so entitled. The RTC acknowledges the existence of a statutory right to a fair market value credit to be given to certain obligors upon notes whose properties are lost through foreclosure. See N.J.S.A. 2A:50-3. Plaintiff also recognizes that, notwithstanding the provisions of N.J.S.A. 2A:50-2.3(a), (rendering the fair market value credit inapplicable to debts secured for commercial or business purposes), case law, nevertheless, has extended this credit to primary obligors in commercial transactions. See Citibank, N.A. v. Errico, 251 N.J. Super. 236, 247, 597 A.2d 1091 (App. Div. 1991). The RTC suggests, however, that Citibank is distinguishable since it involved a primary obligor under a commercial transaction as opposed to a guarantor. The court finds this to be a distinction without a difference.
The equitable right to a fair market value credit to prevent a windfall in a deficiency proceeding is well recognized. In 79-83 Thirteenth Avenue Ltd. v. De Marco, 44 N.J. 525, 210 A.2d 401 (1965), our Supreme Court held that a note mortgagor, although precluded from automatic application of the fair value deduction statute with reference to a deficiency, may nonetheless obtain review and relief, including a reduction of the difference between the mortgage debt and the amount realized from the foreclosure sale, on an equitable basis. Id. at 535, 210 A.2d 401. In 79-83 Thirteenth Avenue Ltd., the inapplicability of the statutory fair *64 value deduction was due to the then existing statutory distinction between bonds and notes. Id. at 529-30, 210 A.2d 401.
In Central Penn Nat'l. Bank v. Stonebridge, Ltd., supra, 185 N.J. Super. at 289, 448 A.2d 498, Judge Deighan permitted a second mortgagee in a foreclosure action commenced by the first mortgagee, to re-open its foreclosure judgment, and amend its complaint to name as defendants the guarantors of a note given in connection with commercial debt. Citing the equitable principles enunciated in 79-83 Thirteenth Ave. v. De Marco, supra, 44 N.J. at 525, 210 A.2d 401, the relief granted was conditioned upon affording the guarantors a fair market value hearing in any subsequent deficiency suit. Id. at 312-13, 448 A.2d 498.
In Citibank, N.A. v. Errico, supra, 251 N.J. Super. at 247, 597 A.2d 1091, the Appellate Division ruled that "(a)lthough N.J.S.A. 2A:50-2.3 was amended to exempt mortgages secured by notes for business and commercial properties from the fair market credit provision, [there is] nothing which precludes a court from applying equitable principles to impose a fair market value credit to prevent a windfall where circumstances require equitable relief in the interests of justice." In Citibank, however, the issue involved an original obligor on a commercial loan as opposed to a guarantor.
The court finds there are neither valid nor compelling reasons to artificially circumscribe the applicability of the equitable principles enunciated in the aforementioned cases. N.J.S.A. 2A:50-3 was enacted to prevent unjust enrichment. In a foreclosure action, the defendant faces not only the prospect of divestiture of title to the mortgaged property, but also the risk of incurring a future obligation to pay any deficiency resulting from the mortgage. See Central Penn Nat'l. Bank v. Stonebridge, Ltd., supra, 185 N.J. Super. at 301, 448 A.2d 498. Under such circumstances, fundamental fairness dictates that a mortgagee ought not be allowed to obtain a windfall even if the "victim" is "merely" a guarantor.
In Carteret Sav. & Loan Ass'n., F.A. v. Davis, 105 N.J. 344, 521 A.2d 831 (1987) Justice O'Hern observed that:

*65 The theory behind the public sale of mortgaged premises is to afford special protection to the debtor-owner, first by insuring the return of any equity represented by surplus of the sale over the mortgage debt, and second by effectively establishing the fair market value of the mortgaged premises to avoid oppressively high deficiency judgments. However, foreclosure sales rarely, if ever, bring a fair market value of the foreclosed property. A recent ten-year study of sheriff's sales in one county showed that 89% of the foreclosure sales resulted in nominal bid acquisitions ($300 or less) by the mortgagee. The mortgagee was forced to bid above the nominal amount in a mere 3% of the sales. Outside bidders purchased for an amount equalling the mortgagee's debt, interest, cost and sheriff's fees in only 3% of the sales.
[Id. at 351, 521 A.2d 831 (citation omitted and emphasis added).]
The recognition of this reality by the Legislature led to the enactment of N.J.S.A. 2A:50-3 and N.J.S.A. 2A:50-22. Ibid.
In this case, the mortgage debt is over $640,000. The sheriff's sale realized $100, bid by the plaintiff. The RTC's appraisal obtained approximately four months prior to the sheriff's sale, valued the property at $375,000. Under these circumstances, to deny Davis the opportunity for a fair market value credit merely because he is a guarantor on a note secured by commercial property would be to elevate form over substance. In this case, equitable principles preclude such a result.
Perhaps recognizing a lack of credibility in its position, the RTC also argues that even if the holding in Citibank were construed to be applicable in this case, Davis nevertheless "waived" any rights he may have had to a fair market value credit.
The guarantee executed by Davis reads, in pertinent part:
[T]he Undersigned does hereby unconditionally guarantee the payment, when due, of all indebtedness, presently existing and hereafter arising of the Borrower to the Association.
* * * * * * * *
This guarantee shall be enforceable by the Association without regard to, and without necessity for resorting to, any property, or interest therein held by the Association at any time or from time to time as security for the payment of an indebtedness guaranteed hereby, and without regard to, and without necessity for resorting to, the Borrower or to any other guarantor of or surety on any indebtedness of the Borrower to the Association.
The Association may, without notice to and without the consent of the Undersigned, and without impairing or in any way affecting the liability of the Undersigned *66 to the Association, ... (2) exchange or surrender all or part of any property by way of pledge, mortgage, or otherwise, as security for the payment of any such indebtedness....
The RTC argues that the transaction between Davis and Prospect Park SLA was "arm's length," and therefore Davis's liability is fixed by the amount of the loan and not the value of the property. Plaintiff's conclusion is that Davis "unequivocally waived" his right to request a fair market value hearing.
In the first instance, the above referenced language does not contain an unequivocal waiver of a right to a fair market value credit. "It is a requisite to waiver of a legal right that there be a `clear, unequivocal and decisive act of a party showing such a purpose or acts amounting to an estoppel on his part'." West Jersey Title, Co. v. Industrial Trust Co., 27 N.J. 141, 152, 141 A.2d 780 (1958). "`Waiver' is the intentional relinquishment of a known right; it presupposes a full knowledge of the right and an intentional surrender." Id. at 152-53, 141 A.2d 780. See also Giorno v. Twp. of South Brunswick, 170 N.J. Super. 162, 166, 406 A.2d 175 (App.Div. 1979). The language contained within the guarantee signed by Davis does not clearly and unequivocally admit a waiver on the part of Davis of a fair market value credit. The issue of such a credit is not even obliquely addressed in the guarantee.
Plaintiff cites Langeveld v. L.R.Z.H. Corp., 74 N.J. 45, 376 A.2d 931 (1977), in support of its argument. However, plaintiff's reliance upon this decision appears misplaced. The RTC accurately notes that in Langeveld, the Supreme Court recognized a guarantor's right to waive contractual or statutory rights. Id. at 53, 376 A.2d 931. However, the Court cautioned that in order to sustain an alleged waiver, evidence must be adduced demonstrating that the waiver was unequivocal.
In Langeveld, the Court was required to determine whether a guarantor's liability on a note was discharged as a consequence of the mortgagee's impairment of the collateral. In that case, the Court found the absence of express language in the guarantee specifically waiving or renouncing the defense of impairment of *67 collateral as evidence there had been no unequivocal waiver of that right. The Court found that the wording of the guarantee under consideration merely rendered the defendant an "unconditional guarantor." As such, the mortgagee was permitted to move against the guarantor without the necessity of first proceeding against either the principal obligor or the collateral. Id. at 54, 376 A.2d 931.
The guarantee analyzed by the Supreme Court in Langeveld is similar, but by no means identical to the guarantee executed by Davis. However, the parallelism between the two instruments is the absence of express language clearly and unequivocally waiving a specific legal or equitable right.
As in Langeveld, the guarantee executed by Davis conferred upon him the status of an unconditional guarantor. As such, the RTC was permitted to pursue Davis on his liability on the loan regardless of whether it proceeded against Berman Industries or the secured property. Parenthetically, it is noted that the RTC, by virtue of Davis's status as a guarantor on a commercial loan, possessed that right even in the absence of the aforementioned provision. However, this does not mean that the RTC had obtained the right to recover more than was owed on the debt regardless of the source of recovery. The RTC is only permitted to obtain a recovery up to the full amount of its loss, and no more, regardless of the sequence in which it pursued the various obligors.
As far as can be ascertained from the pleadings filed and papers submitted in connection with the instant motions, Davis does not seriously dispute his liability to the RTC. The defenses asserted to the ability of the RTC to maintain this action are without merit. Accordingly, there appears no palpable reason for denying plaintiff the benefit of judgment creditor status, provided it does not result in the recovery of more than the amount owed to it. The spectre of a windfall raised by Davis can be avoided by affording him a fair market value hearing prior to the entry of a judgment on damages. Therefore, plaintiff's motion for summary judgment *68 against Davis is granted on the issue of liability. Defendant Davis shall be permitted an opportunity to introduce evidence as to the fair market value of the mortgaged premises at the time of the sheriff's sale. The deficiency, if any, shall be determined by deducting from the secured debt the amount determined to be the fair market value of the premises.