NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0891-15T11
 A-2989-15T3

CUSTOMERS BANK,

 Plaintiff-Respondent,

v.

JOSEPH PACITTI, PENNSYLVANIA
AVENUE LAND DEVELOPMENT, LP,
PRA WALLINGFORD, LLC, O.E.
ORANGE, LP, O.E., LP,
FRONT STREET DEVELOPMENT
ASSOCIATES, LP,

 Defendants-Appellants.
___________________________________

 Argued March 21, 2017 – Decided October 12, 2017

 Before Judges Messano, Suter and Guadagno.

 On appeal from the Superior Court of New
 Jersey, Law Division, Camden County, Docket
 No. L-3985-10.

 Daniel D. Haggerty argued the cause for
 appellants (Kang Haggerty & Fetbroyt LLC,
 attorneys; Mr. Haggerty and Jason E. Powell,
 on the briefs).

 Thomas B. O'Connell argued the cause for
 respondent (Saldutti Law Group, attorneys; Mr.

1
 These are back-to-back appeals consolidated for the purpose of
this opinion.
 O'Connell and Robert T. Lieber, Jr., of
 counsel and on the briefs).

 The opinion of the court was delivered by

SUTER, J.A.D.

 In appeal A-0891-15, defendants Joseph Pacitti, Pennsylvania

Avenue Land Development; PRA Wallingford, LLC; O.E. Orange, LP;

O.E., LP; Front Street Development Associates, LP (defendants)

appeal the September 14, 2015 order that denied their motion to

enforce litigants rights and for other relief. In appeal A-2989-

15, defendants appeal the February 10, 2016 order2 that determined

the "total amount outstanding, due and owing" by defendants to

Customers Bank (plaintiff) based on a 2010 docketed judgment and

ordered other relief in aid of execution of the judgment. We

dismiss A-0891-15 because the September 14, 2015 order was

interlocutory and defendants did not request leave to appeal. See

R. 2:5-6(a). In A-2989-15, we affirm in part, reverse in part and

remand for proceedings consistent with this opinion. We determine

herein that plaintiff and defendants are collaterally estopped

from contesting the fair market value credit that was included in

the Connecticut deficiency judgment, which credit applies to the

amount due and owing on the 2010 judgment.

2
 This order was amended on March 15, 2016 to correct a computation
error. Defendants amended their notice of appeal to include the
March 15th order.

 2 A-0891-15T1
 I.

A. The New Jersey Judgment

 In 2006, defendant Pennsylvania Avenue Land Development, LP

(PALD) executed a promissory note for $4,500,000 to Interstate Net

Bank (Interstate). The loan was secured by a commercial security

agreement and UCC financing statement executed by PALD as well as

a note and mortgage on a parcel of property in Pennsylvania. Under

the note, PALD agreed to repay any and all amounts "expended or

advanced by lender relating to any collateral securing the note."

The other defendants, including defendant Joseph Pacitti

(Pacitti), who was a general partner of PALD, executed commercial

guarantees where they "unconditional[ly] guarantee[d]" to pay

Interstate if PALD defaulted. Under that agreement, the collateral

that had secured the note was replaced. In 2008, the loan was

modified and reduced to $1,500,000 through a change in terms

agreement. As of May 2009, the loan was secured by a mortgage on

real property located at 1181 Barnes Road in Wallingford,

Connecticut (the Connecticut Property) owned by defendant PRA

Wallingford, LLC (PRA). Pacitti signed the note and mortgage as

PRA Wallingford's authorized member.

 PALD defaulted on the note, and in 2010, Interstate filed

suit against defendants in the Camden County Superior Court, Law

Division, seeking a monetary judgment. On November 4, 2010, a

 3 A-0891-15T1
default judgment in the amount of $1,540,867.53 was entered against

Pacitti and most of the other defendants3 and a writ of execution

issued shortly thereafter. That judgment was docketed in January

2012. It has been reduced by two turnover orders, one in 2011 for

$2965.98 and another in 2014 for $13,781.42.

B. The Connecticut Foreclosure

 In May 2011, plaintiff4 filed a foreclosure complaint in the

Superior Court of Connecticut, Judicial District of New Haven at

Meridian requesting to foreclose on the Connecticut property. It

requested a judgment of strict foreclosure and a deficiency

judgment, including attorney's fees and other costs. Pacitti does

not dispute that he was served with this foreclosure complaint and

that no answer was filed. Defendants were defaulted in the

Connecticut action.

 Plaintiff obtained an appraisal of the fair market value of

the Connecticut property, which as of January 31, 2013, was

3
 A judgment against defendant Front Street Development Associates,
LP was entered on February 23, 2011 in the amount of $1,567,426.12.
4
 Customers Bank is the successor in interest to Interstate having
been transferred the note and mortgage by the FDIC as receiver of
Interstate. Customers Bank assigned its interest in the note and
mortgage to Devon Service Connecticut, LLC in June 2012. Although
Customers received permission by the trial court to substitute
Devon as plaintiff, these appeals remain captioned in the name of
Customers Bank. Because the parties did not distinguish the two,
we simply refer to both as plaintiff.

 4 A-0891-15T1
$1,175,000. The appraisal specifically noted that it assumed

"environmental compliance" on "the date of valuation" for the

property in "as in" condition. An order of strict foreclosure was

entered on June 20, 2013, which set forth defendants "debt" as

$2,119,292.70 and included other fees. This showed the fair market

value of the property to be $1,175,000.

 Plaintiff next filed a motion against defendants requesting

the entry of a deficiency judgment in the Connecticut action.

Plaintiff's application relied on the appraisal of the property,

reflecting a fair market value of $1,175,000. The fair market

value set forth in the plaintiff's appraisal was credited against

the defendants' debt.5 The deficiency judgment was entered on

October 2, 2013, in the amount of $1,086,645.36, which reflected

a credit for the property's $1,175,000 fair market value. The

deficiency judgment also included interest at the contract rate,

interest at the default rate, real estate taxes, late charges,

miscellaneous charges, and appraisal and environmental fees.

C. Proceedings in New Jersey

 From then through early 2014, plaintiff sought enforcement

of the New Jersey judgment, successfully levying an additional

5
 The "debt" started with the amount of the docketed judgment in
New Jersey less the $2965.98 levy which already had occurred.

 5 A-0891-15T1
$13,781.42. Plaintiff issued information subpoenas, deposition

notices, and obtained an ex parte order requiring Pacitti to appear

for a deposition with his financial records.6 In 2015, in response

to plaintiff's motion to compel Pacitti's deposition, Pacitti

cross-moved to vacate the New Jersey judgment, requested

reconsideration of the deposition order and asked for a hearing

on the fair market value credit for the Connecticut property. On

April 28, 2015, the trial court ordered depositions and otherwise

denied defendants' requests to stay discovery regarding Pacitti's

assets. The court denied without prejudice the request to vacate

the judgment or to conduct a fair market value hearing. It directed

plaintiff to "provide an accurate accounting of monies due."7

 Plaintiff followed up by sending the court a "breakdown of

damages," enclosing the "final proposed calculation of deficiency"

that was filed in Connecticut. This detailed the deficiency

judgment in Connecticut for a "proposed total deficiency" as of

October 2, 2013, of $1,086,645.36, then added an additional

$175,073 for "note interest" for a total of $1,261,718.36 accruing

at the per diem amount of $301.85.

6
 Plaintiff requested to record the Connecticut deficiency judgment
as a foreign judgment under N.J.S.A. 2A:49A-25.
7
 The trial court also granted plaintiff's request to amend the
caption to substitute Devon Service LLC as plaintiff in the Law
Division action.

 6 A-0891-15T1
D. The September 14, 2015 Order

 The parties returned to court on defendants' motion to enforce

litigant rights shortly thereafter. Defendants contended the

plaintiff's accounting was not accurate, that plaintiff made a

submission to the IRS, reporting the amount of the outstanding

debt was $342,142, which should be binding on plaintiff, and

defendants renewed their request for a fair market value hearing.

Plaintiff requested sanctions for non-compliance with discovery.

 The trial court issued an order dated September 14, 2015 that

denied much of the requested relief. The request for a fair market

value hearing was denied because of the proceedings that occurred

in Connecticut where there was "extensive" consideration given "to

the establishment of a value" and defendant "was noticed of that

proceeding." Because defendant "overlooked th[e] opportunity" to

challenge the appraisal, he was foreclosed from doing so now. The

trial court rejected defendants' argument that plaintiff should

be bound by its representation to the IRS because reporting was

"evidentiary but . . . not conclusive." The court determined that

the $1,540,867.53 New Jersey judgment was the controlling judgment

and from that figure the court would deduct the amount of the

turnover orders. The judge left as an open question what deduction

was appropriate for the fair market credit and whether there were

"any other costs that the bank could claim that were not determined

 7 A-0891-15T1
at the time of the judgment in 2010." The court would not stay

discovery. Defendants have appealed this order under A-0891-15.

E. The February 20, and March 15, 2016 Orders

 The parties returned to court in November 2015 because

plaintiff requested an order to appoint a rent receiver, to sell

a property owned by Pacitti in Wildwood, and for a charging order.

The trial court heard oral argument on November 6, 2015, but

adjourned the matters because it first wanted "a finite number"

presumably referencing the outstanding issue about the fair market

value credit.

 When the parties returned, defendants were requesting a fair

market credit of at least $1,175,000 or higher; plaintiff was

requesting a credit of only $470,000, reflecting the amount it

obtained from the actual sale of the Connecticut property. In its

March 15, 2016 order, the trial court found the amount due and

owing on the 2010 judgment was $1,199,556.09, taking into

consideration the original amount of the judgment, the two levies

and a fair market value credit of $470,000 which represented the

proceeds from the February 26, 2015 sale of the Connecticut

property. The court used the $470,000 figure, because this is

"what a willing buyer and willing seller would buy and sell a

property at arms length agreement." Also included were $119,234.03

in fees and costs incurred by plaintiff in obtaining the

 8 A-0891-15T1
foreclosure judgment, but this figure excluded contractual

interest or late fees. The amount due and owing also included

$26,192.93 in statutory post-judgment interest on the principal

amount of the judgment as of December 4, 2015. The court ordered

the sale of the Wildwood property and denied plaintiff's requests

for a receiver or a rent receiver. Plaintiff withdrew its request

for a charging order. Defendants appeal this order under A-2989-

15.

 II.

 In A-0891-15, defendants contend they are entitled to a fair

market credit for the Connecticut property as of the time plaintiff

recovered it in foreclosure, that plaintiff should be estopped

from obtaining any value other than its appraised value of

$1,175,000, that plaintiff should be bound to the amount of the

New Jersey judgment, that defendants' rights as litigants have

been violated, and that execution should be stayed until the fair

market value credit is determined.

 In A-2989-15, defendants contend the trial court erred in the

manner it determined fair market value because they were entitled

to a credit on the value of the property as of June 20, 2013, and

that plaintiff should be estopped from claiming a lesser value,

that the court's calculation of the amount of the indebtedness is

contrary to New Jersey law and should be $317,142.90, which is the

 9 A-0891-15T1
figure that the plaintiff reported to the IRS. Defendants also

contend the court erred in authorizing the sale of Wildwood

property.

 III.

 We begin by dismissing appeal A-0891-15 as interlocutory.

That appeal is from the September 14, 2015 order, which was

interlocutory in that it did not resolve how much was due and

owing on the 2010 judgment, including the fair market credit.

Defendants' appeal was filed without having first obtained leave

to appeal contrary to Rule 2:5-6(a). See Parker v. City of

Trenton, 382 N.J. Super. 454, 458 (App. Div. 2006) (explaining

that "if we treat every interlocutory appeal on the merits just

because it is fully briefed, there will be no adherence to the

Rules, and parties will not feel there is a need to seek leave to

appeal from interlocutory orders."). To the extent A-0891-15

raises issues about the amount of the judgment, those issues are

fully addressed in appeal A-2989-15.

 A central issue on appeal is the trial court's determination

of the amount due and owing by defendants on the 2010 judgment.

Because the trial court's decision was based entirely on the

judge's application of legal standards to undisputed facts, our

standard of review is de novo. Nicholas v. Mynster, 213 N.J. 463,

478 (2013). We do not owe any deference to the trial court's

 10 A-0891-15T1
legal interpretation or application of a legal standard to

undisputed facts. Zabilowicz v. Kelsey, 200 N.J. 507, 512-513

(2009).

 The issue about the fair market value credit arose from

plaintiff's efforts to enforce the docketed judgment and

defendants' efforts to oppose and clarify the amount of the

judgment. We pause first to observe what was not before the trial

court. The court was not asked to enter a deficiency judgment

following foreclosure or to enforce the deficiency judgment from

Connecticut. Therefore, we agree with the trial court that the

appropriate starting place in its analysis was with the docketed

judgment in New Jersey and not the deficiency judgment in

Connecticut.

 In 2010, a judgment for $1,540,867.53 was entered in favor

of plaintiff against defendants. After it was docketed as a

statewide judgment, there were two levies; one for $2956.98 and

another for $13,781.42. Defendants do not contest that the trial

judge was correct in deducting the amount of those levies from

this judgment. The trial judge also determined that "statutory

post-judgment interest" in the amount of $26,192.93 was due on the

amount of the outstanding judgment as of December 4, 2015.

Defendants do not dispute that finding or calculation.

 11 A-0891-15T1
 At the core of these appeals is whether defendants were

entitled to a fair market credit for the property that was

foreclosed in Connecticut and if so, the amount of the credit.

The trial court applied the actual sale price of the property not

its appraised value at the time of the strict foreclosure.

 There is a "statutory right to a fair market value credit to

be given to certain obligors upon notes whose properties are lost

through foreclosure." Resolution Trust Corp. v. Berman Indus.,

Inc., 271 N.J. Super. 56, 63 (Law Div. 1993); see N.J.S.A. 2A:50-

3. However, N.J.S.A. 2A:50-2.3 exempts "proceedings to collect a

debt evidenced by a note and secured by a mortgage . . . [w]here

the debt secured is for a business or commercial purpose . . . ."

 We have extended the fair market value credit under principles

of general equity to deficiency actions involving commercial

transactions where the interests of justice so require. In

Citibank, N.A. v. Errico, 251 N.J. Super. 236, 247 (App. Div.

1991), we ordered a hearing to determine the amount of a deficiency

judgment following a bank's foreclosure in New Jersey on a mortgage

and security agreement arising from a commercial loan. The

foreclosure judgment and sale of the commercial property was stayed

by the bankruptcy of the co-signers. The bank offered a fair

market appraisal of the property in the bankruptcy matter which

exceeded the amount the bank was entitled to from the foreclosure

 12 A-0891-15T1
sale based on a consent order. When the property actually sold

at auction, the only bid was for less than the consent order.

"Errico did not object to the auction price." Id. at 240.

 The bank then sued Errico for the deficiency between the

auction price and the consent order. Errico moved to dismiss,

claiming that under New York law, the fair market value should be

based on the bank's appraisal. The bank moved for summary

judgment. We held the bank's argument "that there is no

entitlement to a fair market value credit in a deficiency action

in New Jersey on a note where business or commercial property is

involved is not a correct statement of our law." Id. at 246-47.

Indeed we found that nothing in N.J.S.A. 2A:50-2.3 "precludes a

court from applying equitable principles to impose a fair market

value credit [for business or commercial properties] to prevent a

windfall or where circumstances require equitable relief in the

interests of justice." Id. at 247. "An equity court has the

inherent power to prevent a potential double recovery or windfall

to a judgment creditor." Ibid. (citing Morsemere Federal Savings

& Loan Ass'n v. Nicolau, 206 N.J. Super. 637, 645 (App. Div.

1986)). We held that the same "ability to fashion equitable

remedies" existed in the Law Division under our constitution.

Ibid. See N.J. Const. art. VI, § 3, ¶ 4. As such, we held that

"New Jersey law allows a deficiency hearing to preclude a windfall

 13 A-0891-15T1
under general equitable principles" and we remanded for a hearing.

Id. at 248.

 Here, the trial judge was not asked to determine a deficiency

judgment in a foreclosure case. That issue was resolved in

Connecticut and a fair market value credit was given for the

defendants' benefit based on an appraisal by the plaintiff bank.

There is no question that Pacitti and the other defendants who are

involved in this appeal were defendants in the Connecticut

foreclosure and the subsequent deficiency action. The plaintiff

in Connecticut is the same plaintiff before the trial court here.

None of the parties contend that the Connecticut court was without

jurisdiction when it granted foreclosure or when it determined the

amount of the deficiency judgment. We conclude that both parties

are collaterally estopped from challenging the appraisal's fair

market value figure.

 The benefits of the doctrine of collateral estoppel are

"finality and repose; prevention of needless litigation; avoidance

of duplication; reduction of unnecessary burdens of time and

expenses; elimination of conflicts, confusion and uncertainty; and

basic fairness." Hennessey v. Winslow Twp., 183 N.J. 593, 599

(2005) (citing Hackensack v. Winner, 82 N.J. 1, 32-33 (1980)).

"If an issue between the parties was fairly litigated and

 14 A-0891-15T1
determined, it should not be relitigated." First Union National

Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007).

 Collateral estoppel requires that:

 (1) the issue to be precluded is identical to
 the issue decided in the prior proceeding;
 (2) the issue was actually litigated in the
 prior proceeding; (3) the court in the prior
 proceeding issued a final judgment on the
 merits; (4) the determination of the issue was
 essential to the prior judgment; and (5) the
 party against whom the doctrine is asserted
 was a party to or in privity with a party to
 the earlier proceeding.

 [In re Estate of Dawson, 136 N.J. 1, 20 (1994)
 (citations omitted).]

All of these elements are present here.

 The Connecticut court that entered the deficiency judgment

determined the fair market value credit as of the time the property

was transferred to plaintiff. The amount of this credit is the

identical question raised here. Plaintiff placed the issue of the

fair market value credit squarely before the Connecticut court by

filing a motion seeking a deficiency judgment.

 The defendants had the ability to contest the bank's appraisal

in the Connecticut case and did not. In First Union, supra, the

Court rejected the argument that an issue was not "actually

litigated" where the party seeking preclusion "had ample

opportunity to contest the complaint," and "d[id] not claim

prejudice as a result of a default judgment." 190 N.J. at 354.

 15 A-0891-15T1
The fair market value credit was essential to determining the

amount of the deficiency. The parties in the Connecticut

litigation were the same as the parties in the New Jersey

litigation. The Connecticut court entered a final judgment finding

the fair market value as of August 2013 when the plaintiff's strict

foreclosure was granted and the time for redeeming had passed. We

are not aware that any party appealed the Connecticut deficiency

judgment. Therefore, we agree with the trial court that defendants

are not entitled to a fair market value hearing because that issue

was resolved in Connecticut.

 However, we find error in the trial judge's inconsistent

decision that plaintiff was not also bound. Plaintiff relied on

the appraisal that it commissioned. Plaintiff was as much a

participant in the deficiency proceeding in Connecticut as the

defendants. Indeed, the Connecticut court made its determination

based on an application brought by plaintiff. Although there is

some superficial appeal to the bank's argument that defendants may

obtain a windfall if the actual sale price of $470,000 were not

used, the appraisal used by the bank had a clear reservation that

the property was not reviewed for environmental issues.

Presumably, plaintiff could have waited until it sold the property

to ask for the deficiency judgment but chose to proceed based on

its appraisal. Thus on the facts of this case, we conclude that

 16 A-0891-15T1
plaintiff and defendants were collaterally estopped from

contesting the fair market value credit that was determined by the

Connecticut court and that $1,175,000 is the credit to be used

herein.

 In determining the amount of the judgment, the trial court

included $119,234.03 in fees and costs incurred by plaintiff in

pursuing the foreclosure judgment, excluding contractual interest

or late fees.8 Defendants dispute the inclusion of these amounts

within the amount due and owing on the judgment, claiming the

amount of the judgment could not be increased, citing to First

Union, supra. We discern no error by the trial court.

 In First Union, the Court determined that "to the extent the

note and mortgage provide for the same categories of damages, the

amount determined in the first action is binding in the subsequent

action." 190 N.J. at 344-45. However the Court also added that

"[e]xcept for amounts accruing after the first judgment and for

different categories of damages, the amount of the judgment entered

in each action should be identical." Id. at 345. On this basis

we see no error by the trial court's inclusion of additional

8
 The court determined not to add certain expenses incurred by the
bank after they gained ownership of the property or the contract
or default interest rates. Plaintiff did not file a cross-appeal
and thus has not contested the exclusion of those amounts from the
judgment.

 17 A-0891-15T1
amounts incurred by plaintiff in obtaining the collateral through

the foreclosure action.9

 We remand to the trial judge for application of the fair

market valuation credit as we have determined to the 2010 judgment,

along with the inclusion of $119,234.03 in fees and costs incurred

by plaintiff in pursuing the foreclosure judgment, excluding

contractual interest or late fees. A recalculation of the

statutory post-judgment interest is also required.

 IV.

 We briefly address other issues raised in this appeal.

Defendants challenge the order granting plaintiff's application

to sell the Wildwood property. The sale of real property to

satisfy a judgment is permitted "[i]f the debtor’s personal

property is insufficient or cannot be located." R. 4:59-1(d)(1).

 Here, counsel for plaintiff certified that Pacitti "ha[d] not

disclosed any goods or chattels subject to execution," that his

wife refused entry to execute on any property at the marital home,

and that defendant "ha[d] not attempted to satisfy the Judgment

since it was entered against him . . . ." As we said in Borromeo

v. DiFlorio, 409 N.J. Super. 124, 137 (App. Div. 2009) (quoting

9
 Defendants have not contested the actual amount of these charges,
just the fact of their inclusion. They are precluded from further
contesting the amount. See Muto v. Kemper Reinsurance Co., 189
N.J. Super. 417, 420-21 (App. Div. 1983).

 18 A-0891-15T1
In re Mariano, 339 B.R. 344, 350 (Bankr D.N.J. 2006), "the test

is not whether all possible measures to locate personalty have

been undertaken, but [whether] the judgment creditor exerted

'reasonable efforts' in good faith to locate personal property."

We find no error in the order to sell the Wildwood property based

on the trial court's finding that reasonable efforts were made to

secure defendants' personal property.

 After carefully reviewing the record and the applicable legal

principles, we conclude that defendants' further arguments are

without sufficient merit to warrant discussion in a written

opinion. R. 2:11-3(e)(1)(E).

 Affirmed in part; reversed and remanded in part for

proceedings consistent with this opinion. We do not retain

jurisdiction.

 19 A-0891-15T1