SYLLABUS

This syllabus is not part of the Court’s opinion. It has been prepared by the Office of the
Clerk for the convenience of the reader. It has been neither reviewed nor approved by the
Court. In the interest of brevity, portions of an opinion may not have been summarized.

 West Pleasant-CPGT, Inc. v. U.S. Home Corporation (A-1-19) (082981)

Argued March 3, 2020 -- Decided July 8, 2020

LaVECCHIA, J., writing for the Court.

 In this appeal, the Court considers whether a fair market value credit can be sought
in the absence of a deficiency action or similar proceeding as a means for a debtor to
obtain a money judgment against a creditor.

 In 2005, U.S. Home Corporation (U.S. Home) entered into a contract to purchase
two contiguous tracts of land, one of which was owned by West Pleasant-CPGT, Inc.
(West Pleasant). Under the contract, West Pleasant and the other landowner were to gain
certain approvals permitting development of the properties. Pursuant to the contract, U.S.
Home paid advances to the landowners totaling over $1.5 million. As security for the
advances, West Pleasant executed a mortgage and note on its property; the other
landowner did not.

 When a contract dispute arose in 2006, U.S. Home sought the contract’s
termination and return of its total advance. U.S. Home prevailed in arbitration and was
awarded a judgment in the full amount of the advance, plus interest. The Appellate
Division affirmed the judgment in 2009. When the judgment was not satisfied, U.S.
Home commenced foreclosure actions against the properties.

 The foreclosure proceedings were stayed when West Pleasant and the other
property owner filed for bankruptcy. In West Pleasant’s bankruptcy action, U.S. Home
moved to dismiss and for relief from the automatic stay. West Pleasant and U.S. Home
executed a Consent Order, in which West Pleasant dismissed its bankruptcy proceeding,
waived a fair market valuation and its right to object to a sheriff’s sale of its property, and
released U.S. Home from any claims in law or equity.

 In the bankruptcy action of the owner of the second property, the bankruptcy court
accepted the appraisals of U.S. Home’s expert of $806,000 for the second property and
$412,500 for the West Pleasant property. Because the combined value of the two
properties was less than the amount owed to U.S. Home, the court determined there was
no equity in the second property and lifted the stay, allowing U.S. Home to proceed with
the foreclosures.
 1
 U.S. Home obtained a foreclosure judgment against West Pleasant in November
2010. It executed first on the second property, which it purchased for $100 as the sole
bidder at a sheriff’s sale. Not long afterward, U.S. Home purchased the West Pleasant
property, also for $100 as the sole bidder at a sheriff’s sale.

 U.S. Home never proceeded with any deficiency action against either landowner.
Nonetheless, the landowners commenced the affirmative litigation that gave rise to this
appeal, seeking a declaration that the arbitration award was fully satisfied, as well as
compensation “in the amount of the excess fair market value of the properties obtained by
defendant[] U.S. Home over the amount of its outstanding judgment.” The second
property owner then assigned its rights to West Pleasant.

 After a trial, the court valued the second property as worth almost $2.4 million and
West Pleasant’s property as worth almost $2 million. The court ordered U.S. Home to
pay the fair market value of the West Pleasant property, plus interest, and extinguished
the arbitration award on the second property. On appeal, the Appellate Division
determined that West Pleasant had waived its right to a fair market valuation on its
property but that it was owed a fair market value credit for the second property.
Therefore, the Appellate Division remanded the matter to the trial court for recalculation
of damages. The Court granted certification. 239 N.J. 82 (2019).

HELD: The use of fair market value credit by this debtor to obtain a money judgment
against a creditor -- in the absence of a deficiency claim threatened or pursued or any
objection being raised at the time of the sheriff’s sales -- is inconsistent with sound
foreclosure processes and, moreover, inequitable in the circumstances presented.

1. The Court reviews the legislative history of the relevant statutes. In its present form,
N.J.S.A. 2A:50-2 provides that, after the foreclosure of a mortgage, if the foreclosure
action fails to generate “an amount sufficient to satisfy the debt, interest and costs,” the
creditor may bring a deficiency action. And N.J.S.A. 2A:50-3 provides that a debtor “may
file an answer in the action for deficiency, disputing the amount . . . sued for” (emphasis
added), after which the court shall take evidence and determine the fair market value of
the property. The Legislature included the fair market value credit as a protection for
mortgagors in deficiency actions to use as a shield, not as a sword. The mortgagor is not
left without a remedy, however. The mortgagor may object to the sheriff’s sale under
Rule 4:65-5 and seek a fair market value credit at that time. (pp. 16-20)

2. The statutory scheme is relevant even when, as here, foreclosure follows the
deficiency judgment because courts may consider equitable relief in the form of fair
market value credit in appropriate circumstances. For example, although the statutory
scheme does not apply to judgment creditors, equitable principles grant a court the
inherent power to prevent a potential double recovery or windfall to a judgment creditor
who profits on the purchase of the property at the foreclosure sale and who also seeks to
 2
obtain satisfaction of his judgment. But equity follows the law; it will not change or
unsettle rights that are created and defined by existing legal principles. Thus, the
legislative purposes of the fair market value credit under N.J.S.A. 2A:50-3 have informed
the Court’s equity jurisdiction where the statute would not otherwise apply. Those
purposes -- to protect the mortgagor from a large deficiency judgment and liability for
more than the difference between the fair market value of the property and the mortgage
debt -- are not present here. (pp. 20-22)

3. New Jersey courts that have equitably applied a fair market value credit, where
statutorily it otherwise would have not applied, have done so when the creditor is seeking
a deficiency judgment. MMU of N.Y., Inc. v. Grieser, 415 N.J. Super. 37 (App. Div.
2010), on which West Pleasant relies, is distinguishable. The creditor’s continued pursuit
of recovery against the debtor in that case distinguishes Grieser from these
circumstances. (pp. 22-23)

4. Here, U.S. Home has not sought a deficiency judgment against West Pleasant or
pursued West Pleasant for collection in other ways. U.S. Home conceded at oral
argument that it has waived its judgment against West Pleasant. The Court reviews in
detail U.S. Home’s approach with respect to the foreclosures and concludes that U.S.
Home did nothing untoward in proceeding as it did to obtain the two properties. The
Court stresses that the sheriff’s sales took place months before the instant complaint was
filed and without any deficiency claim being pursued by U.S. Home. (pp. 24-26)

5. This remarkable proceeding in which a debtor brought an after-the-fact affirmative
claim for fair market value and obtained a money judgment against the creditor is
unprecedented and unwarranted. Public policy generally favors finality in the foreclosure
process. A debtor has the ability to seek a fair market value credit by objecting to the
sheriff’s sale. After the time for objecting to the sheriff’s sale has passed, unless a
deficiency action or other collection activity is pursued, later claims for fair market value
credit should not be permitted to generate endless litigation. And prior to filing this
affirmative claim, both property owners had the ability to advance a fair market value
objection during the sheriff’s sales proceedings under Rule 4:65-5, but West Pleasant
waived that option in the Consent Order and the other owner failed to object. The Court
declines to expand the equitable application of fair market value credit to permit the
affirmative relief that was awarded here. (pp. 26-27)

 The judgment of the Appellate Division is REVERSED and the matter is
REMANDED for entry of judgment consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON,
FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE
LaVECCHIA’s opinion.

 3
 SUPREME COURT OF NEW JERSEY
 A-1 September Term 2019
 082981

 West Pleasant-CPGT, Inc.,

 Plaintiff-Respondent,

 v.

 U.S. Home Corporation,
 d/b/a Lennar Homes,

 Defendant-Appellant.

 On certification to the Superior Court,
 Appellate Division.

 Argued Decided
 March 3, 2020 July 8, 2020

Bruce D. Greenberg argued the cause for appellant
(Lite DePalma Greenberg, attorneys; Bruce D.
Greenberg, on the briefs).

Deborah A. Plaia argued the cause for respondent
(Deborah A. Plaia, on the briefs).

Robert M. Washburn argued the cause for amicus
curiae New Jersey Builders Association (Flaster
Greenberg, attorneys; Robert M. Washburn, of counsel
and on the brief).

 1
 JUSTICE LaVECCHIA delivered the opinion of the Court.

 Under current New Jersey statutory law, a creditor who forecloses upon

the mortgage of a debtor may bring a deficiency action against th at debtor if

the foreclosure action does not generate sufficient funds to satisfy the debt,

including interest and costs. See N.J.S.A. 2A:50-2. In response, the debtor

may seek a fair market value credit, or a determination of the property’s value

and award of the difference between that value and the debt owed, should that

value exceed the debt. See N.J.S.A. 2A:50-3. Here, the Court considers

whether a fair market value credit can be sought in the absence of a deficiency

action or similar proceeding as a means for a debtor to obtain a money

judgment against a creditor.

 In this appeal, defendant-petitioner is a creditor that foreclosed on two

commercial properties, purchased the properties at sheriff’s sales conducted

without any objection by the debtors, and never pursued a deficiency action

against the sole debtor that came to hold assigned rights encompassing both

properties. This creditor seeks review of a money judgment obtained by the

plaintiff debtor through a later-in-time action claiming a right to fair market

value credit on the properties.

 2
 During bankruptcy proceedings, which interrupted and delayed the

foreclosure proceedings, the bankruptcy court concluded that the properties’

combined appraised value was less than the debt owed to the creditor,

dismissed the bankruptcy proceedings, and returned the parties to their state

remedies. The resumed foreclosure processes and sheriff’s sales concluded,

without objection, not long thereafter. Months later, the debtor brought this

after-the-fact action seeking a monetary judgment against the creditor for fair

market value credit based on newly calculated appraisals of the properties

looking back at the time of the sheriff’s sales.

 Consideration of fair market value credit has a role in preventing

windfalls to creditors when a creditor forecloses on property and pursues a

deficiency claim. A defensive claim for fair market value credit may be

invoked to prevent a creditor from recovering more than the debt permitted.

Alternatively, under our court rules, a debtor has the right to object to the

sheriff’s sale and may affirmatively raise a fair market value credit at that

time; this debtor, however, failed to avail itself of that option. The award of

an affirmative money judgment against the creditor in the instant

circumstances was in error.

 Informed by New Jersey’s statutory foreclosure process, we conclude

that the use of fair market value credit by this debtor to obtain a money

 3
judgment against a creditor -- in the absence of a deficiency claim threatened

or pursued or any objection being raised at the time of the sheriff’s sales -- is

inconsistent with sound foreclosure processes and, moreover, inequitable in

the circumstances presented. The most that should have happened, in equity,

was the extinguishment of any cognizable deficiency on the creditor’s

judgment -- a result to which defendant accedes.

 We decline to countenance this debtor’s affirmative use of fair market

value credit to obtain an after-the-fact money judgment against a creditor

absent a timely objection to the sheriff’s sale, a creditor’s claim for deficiency,

or some other aspect of ongoing creditor collection activity, which can provide

a proper basis for the debtor’s invocation of a court’s equitable powers. Those

circumstances are not present here. The judgment of the Appellate Division is

reversed, and the matter is remanded for action consistent with this opinion.

 I.

 A.

 We begin with the transactional and litigation background to the civil

action from which this appeal arises.

 On August 9, 2005, West Pleasant-CPGT, Inc. (West Pleasant), Four G’s

Land, LLC (Four G), and U.S. Home Corporation (U.S. Home) entered into a

contract whereby U.S. Home agreed to purchase two contiguous tracts of land

 4
in Jackson, New Jersey, in exchange for the purchase price of $8,400,000.

West Pleasant owned one tract (the West Pleasant Property) and Four G owned

the other (the Four G Property).

 Under the contract, West Pleasant and Four G intended to gain approval

for a subdivision plan to develop forty-two residential lots. The contract also

required West Pleasant and Four G to provide certain development approvals

to U.S. Home. Pursuant to the contract, U.S. Home paid West Pleasant and

Four G three advances, totaling $1,510,000. As security for the advances,

West Pleasant executed a mortgage and note on the West Pleasant Property in

the amount of $1,500,000. Four G did not execute a mortgage on the Four G

Property.

 In August 2006, after a dispute arose over West Pleasant and Four G’s

satisfaction of their contractual development obligations, U.S. Home sought

the contract’s termination and return of its $1,510,000 advance. The parties

submitted the dispute to arbitration.

 1. Arbitration

 On December 5, 2007, an arbitration panel returned an award in favor of

U.S. Home in the amount of $1,510,000, plus interest. The panel found that

West Pleasant and Four G failed to satisfy their development obligations under

the contract and were jointly and severally liable for the advances U.S. Home

 5
had paid. On April 2, 2008, a trial court confirmed the arbitration award,

terminated the contract, and ordered West Pleasant and Four G to pay U.S.

Home $1,510,000, plus interest. The Appellate Division affirmed the

judgment on March 6, 2009.

 When the judgment was not satisfied, U.S. Home commenced

foreclosure actions against the properties. The following actions interrupted

the progress of the foreclosure proceedings, which were automatically stayed.

 2. Bankruptcy proceedings

 On January 4, 2010, West Pleasant filed for Chapter 11 bankruptcy.

Approximately two months later, Four G also filed under Chapter 11 for

bankruptcy.

 In West Pleasant’s bankruptcy action, U.S. Home filed a motion to

dismiss and for relief from the automatic stay related to the West Pleasant and

Four G Properties. U.S. Home and West Pleasant executed a Consent Order

on June 8, 2010 (the Consent Order), which resolved the motion to dismiss and

the motion for relief from the automatic stay with respect to the West Pleasant

Property. In addition to dismissing West Pleasant’s bankruptcy proceeding,

West Pleasant waived in the Consent Order a fair market valuation and its

right to object to a sheriff’s sale of the West Pleasant Property due to the

judgment debt owed to U.S. Home. West Pleasant agreed to “forever waive,

 6
release and discharge [U.S. Home] . . . from any and all claims, claims for

relief, demands, costs, damages, liabilities, and obligations, in law or in

equity,” in relation to the present matter.

 In Four G’s bankruptcy action, U.S. Home sought relief from the

automatic stay with respect to the Four G Property, on which there was no

mortgage. The bankruptcy court conducted an evidentiary hearing on June 4,

2010 to address whether there was any equity in the Four G Property. U.S.

Home presented expert testimony regarding the value of both the Four G and

West Pleasant Properties. Four G failed to present any expert testimony after

its retained expert withdrew due to a conflict of interest.

 U.S. Home’s expert, Peter Maher, who appraised the Four G and West

Pleasant Properties as of April 2010, testified that the Four G Property had a

fair market value of $806,000 and the West Pleasant Property had a fair market

value of $412,500.

 The court issued its decision on June 9, 2010. The court determined

Maher to be a highly qualified appraiser and found no reason not to accept his

valuation of the Properties. The court concluded that the Four G Property’s

value was $806,000 and the West Pleasant Property’s value was $412,500.

Because the total debt owed -- more than $1,600,000 -- exceeded the total

value of the collateral of $1,218,500, the court determined that there was no

 7
equity in the Four G Property. Accordingly, the court granted relief from the

automatic stay and permitted U.S. Home to “return to state court and exercise

all of its rights under the laws of the State of New Jersey.” Thereafter, on

September 28, 2010, the court dismissed Four G’s bankruptcy.

 3. Foreclosure and Sheriff’s Sales

 As noted, U.S. Home had filed its foreclosure action against West

Pleasant on April 14, 2008. Following West Pleasant’s and U.S. Home’s entry

into their Consent Order, U.S. Home completed its foreclosure proceeding

against West Pleasant on November 5, 2010, obtaining a foreclosure judgment,

plus costs and fees, in the amount of $1,705,470.90.

 U.S. Home executed first on the Four G Property, which was sold at

sheriff’s sale on December 7, 2010. U.S. Home was the only bidder and

purchased the property for $100. After the sale, U.S. Home’s deficiency

totaled $1,736,808.87.

 On January 25, 2011, the West Pleasant Property was sold at sheriff’s

sale. Again, U.S. Home was the only bidder, and it purchased the property for

$100. After that sale, U.S. Home’s deficiency totaled $1,734,485.40.

 U.S. Home never proceeded with any deficiency action against West

Pleasant or Four G. Nonetheless, West Pleasant and Four G commenced the

affirmative litigation that gave rise to this appeal.

 8
 B.

 On July 14, 2011, West Pleasant and Four G filed the instant complaint

in the Law Division of Superior Court seeking a declaration against U.S. Home

that the arbitration award was fully satisfied, as well as compensation “in the

amount of the excess fair market value of the properties obtained by

defendant[] U.S. Home over the amount of its outstanding judgment.” Four G

then assigned its rights to West Pleasant, and West Pleasant, individually and

as assignee of Four G, filed a second amended complaint seeking

compensatory damages, among other relief, and asserting a claim for abuse of

process.

 In April 2014, the trial court held that a trial was necessary to determine

the value of the Four G Property as of December 7, 2010, the date of the

sheriff’s sale for that property. As a result of that proceeding, the court valued

the property as worth $2,398,000 as of December 7, 2010.

 Then, in August 2016, the court conducted proceedings to determine the

value of the West Pleasant Property as of January 25, 2011, the date of the

sheriff’s sale for that property. On December 16, 2016, the trial court issued

its decision concerning the West Pleasant Property. The court determined that,

as of the date of the sheriff’s sale, the value of the West Pleasant Property was

$1,985,020.

 9
 The court also determined that it could not ignore the value that U.S.

Home received from the sheriff’s sale of the Four G Property. According to

the trial court, when U.S. Home successfully levied on the Four G Property --

which, again, it had valued at $2,398,000 -- U.S. Home “received a value in

excess of the outstanding judgment amount.”

 That determination spurred the court to conclude that the “foreclosure on

the West Pleasant parcel was without merit.” As a result, West Pleasant was

“entitled to a credit for the fair market value of the property [U.S. Home]

acquired in excess of the full judgment amount.” In a judgment entered on

October 19, 2017, the trial court ordered U.S. Home to compensate West

Pleasant in the amount of $2,299,088.23, which represented the trial court’s

fair market value determination of $1,985,020 for the West Pleasant Property,

plus interest.1 The court also dismissed West Pleasant’s abuse of process

claim.

 C.

 U.S. Home filed an appeal, and West Pleasant filed a cross-appeal. U.S.

Home asserted that the credit to West Pleasant was barred or otherwise

1
 The trial court awarded West Pleasant a fair market value credit for the Four
G Property and extinguished the arbitration award, but did not award a money
judgment for the amount that the Four G Property’s fair market value exceeded
the arbitration award.
 10
precluded. West Pleasant sought a money judgment for the Four G Property

and challenged the dismissal of its abuse-of-process claim.

 On May 2, 2019, in an unpublished opinion, the Appellate Division

affirmed in part and reversed in part. It affirmed the trial court’s dismissal of

plaintiff’s abuse-of-process claim. However, the Appellate Division’s analysis

of the fair market value credit issue resulted in reversal and remand for further

proceedings on that claim.

 First, the Appellate Division rejected the argument that the fair market

value credit claim was barred because West Pleasant failed to make a motion

to set aside the sheriff’s sale on the West Pleasant Property under Rule 4:65-5.

The Appellate Division agreed with the trial court’s view that Rule 4:65-5

“pertains only to objections to the sale of the property, not the value of the

property vis-à-vis the amount of the judgment sought to be satisfied.”

 The court also rejected U.S. Home’s argument that “a fair market value

credit can be claimed only at a deficiency hearing” and that plaintiff was

precluded from bringing an affirmative suit untethered from a deficiency

action to obtain such credit. The Appellate Division stated that “[r]elief

through equitable principles is especially applicable in this case where [U.S.]

Home was both a foreclosing mortgagee on the West Pleasant tract and a

judgment creditor of Four G[].” The court explained that, “by executing on

 11
both tracts, [U.S. Home] realized more than a double recovery when, in

satisfaction of its debt of approximately $1.7 million, it received land valued at

over $4 million.” As the court observed, equity should not aid a creditor that

“seeks to protect a windfall by refraining from instituting a deficiency action,”

thereby recovering property which is worth far in excess of what it is owed.

 The Appellate Division did not credit the argument that by agreeing to

the broad language of the Consent Order before the bankruptcy court, West

Pleasant “intended to forgo any future claim for fair market value credit.” The

Appellate Division held that, although the Consent Order barred West Pleasant

from pursuing a fair market value credit claim on the West Pleasant Property ,

that did not control the analysis for the Four G Property.

 Because Four G was not a party to the Consent Order, the Appellate

Division separately considered whether “the doctrines of res judicata and

collateral estoppel barred West Pleasant from relitigating the value of the Four

G[] tract because the Bankruptcy Court had valued it after an evidentiary

hearing.” The Appellate Division agreed with West Pleasant’s argument that

the issues decided by the bankruptcy court and the trial court were different.

Accordingly, the Appellate Division held that preclusion doctrines did not

apply, and it refused to apply judicial estoppel.

 12
 In sum, the Appellate Division concluded the following: U.S. Home’s

purchase of the West Pleasant Property, as appraised by the trial court as of the

date of its sheriff’s sale on January 25, 2011, satisfied U.S. Home’s judgment;

under the Consent Order, West Pleasant waived any right to seek a fair market

value credit on that property; however, as assignee of Four G, West Pleasant

was owed a fair market value credit for the Four G Property. Therefore, the

Appellate Division remanded the matter to the trial court for further

calculations finalizing the monetary judgment to be awarded to West Pleasant

for fair market value credit on the Four G Property.2

 We granted U.S. Home’s petition for certification, 239 N.J. 82 (2019),

and amicus curiae status to the New Jersey Builders Association (NJBA).

 II.

 A.

 1.

 According to U.S. Home, fair market value credits are available only to

prevent a “double recovery” or “windfall” that results from the creditor or

mortgagee obtaining a property and collecting, or seeking to collect, a money

judgment “arising out of the same default that led to the sale of that same

2
 The Appellate Division directed the trial court to calculate the amount due
U.S. Home on the date it acquired the West Pleasant Property.
 13
property.” Therefore, U.S. Home argues that because it did not pursue a

deficiency judgment following its acquisition of the properties, no fair market

value credit may be awarded.

 U.S. Home describes the damages awarded here as unprecedented and

unwarranted. Even if a fair market value credit may apply outside of a

deficiency action, U.S. Home argues, equity does not support awarding West

Pleasant a fair market value credit in light of the Consent Order it signed

concerning the West Pleasant Property and, further, because U.S. Home

executed on the Four G Property first.

 U.S. Home also maintains that the Appellate Division misapplied

appropriate preclusion principles by adopting the trial court’s -- rather than the

bankruptcy court’s -- valuation of each property. According to U.S. Home,

after West Pleasant took assignment of Four G’s rights, West Pleasant should

not have been allowed to relitigate the bankruptcy court’s valuation of

$806,000 for the Four G Property in the trial court.

 2.

 The NJBA asserts that the Legislature evidenced in N.J.S.A. 2A:50-3 its

intent to limit fair market value credits to deficiency actions and contends that

the decision to extend fair market value credits to cases outside of a deficiency

 14
action is inconsistent with that legislative intent, prior Appellate Division

decisions, and decisional law and commentary.

 According to the NJBA, lenders have relied on previous holdings and, in

practice, have elected not to pursue a deficiency action to avoid a fair market

value credit. The Appellate Division’s holding “undoes the previous

predictability upon which lenders had relied,” in amicus’s view.

 Further, if a new collateral action affirmatively seeking fair market value

credit is to be available in equity to debtors who do not face a deficiency

action, the NJBA asserts that a debtor should not be permitted to use it as a

“weapon” to obtain a money judgment against its creditor. It argues that, at

most, a court should declare that the debtor’s remaining debt on the judgment

has been satisfied.

 B.

 West Pleasant asserts that fair market value credits are not limited to

deficiency actions. Even in the absence of express statutory authorization, it

claims that the Appellate Division appropriately invoked its inherent equitable

authority to prevent U.S. Home’s windfall.

 According to West Pleasant, U.S. Home “chose to execute on the Four

G[] [P]roperty first rather than foreclose on the West Pleasant [P]roperty ,” and

so it claims that the equities lie in its favor concerning fair market value credit.

 15
U.S. Home’s advance was over-collateralized and, as a result, “U.S. Home

realized more than a double recovery.”

 Additionally, West Pleasant, as assignee of Four G’s rights, argues that

it was not precluded from litigating the value of each property before the trial

court because the acts complained of, the theory of recovery, and the material

facts alleged before the bankruptcy court and the trial court were not the same .

The issue before the trial court was the credit amount for the fair market value

determined by the properties’ values at the time of the sheriff’s sales; in

contrast, the issue before the bankruptcy court was U.S. Home’s motion for

relief from the automatic stay under Four G’s bankruptcy petition.

 III.

 This dispute centers on the importance of a deficiency action -- or, more

precisely, the lack of any deficiency action -- to the award of a fair market

value credit. See N.J.S.A. 2A:50-3. To answer that question, we examine the

Legislature’s purpose in enacting a fair market value credit and whether that

purpose is present in this case. We also consider relevant equitable principles.

 A. Legislative History

 Beginning in 1880, a deficiency decree following the foreclosure of a

mortgage was prohibited by statute. L. 1880, c. 170; see also Myron C.

Weinstein, Law of Mortgages, 30A N.J. Practice Law Series § 39.1 (2d ed.

 16
2019). That same statute, however, permitted the mortgagee to foreclose on

the mortgage first and then proceed on the bond for any deficiency to satisfy

the debt owed. L. 1880, c. 170. In 1881, the Legislature amended the statute

to provide that the mortgagee must, in all cases, foreclose on the mortgage first

before proceeding against the bond for a deficiency. L. 1881, c. 147.

 It was not until 1933 that the Legislature provided the option for a

mortgagor to seek a fair market value credit in a deficiency action. See L.

1933, c. 82. The 1933 amendment stated that

 all proceedings to collect said debt shall be, first, to
 foreclose the said mortgage, and if at the sale of the
 mortgaged premises under said foreclosure proceedings
 the said premises should not sell for a sum sufficient to
 satisfy said debt, interest and costs, then and in such
 case it shall be lawful to proceed on the bond for the
 deficiency . . . . [T]he obligor or obligors in said bond
 may file an answer in the suit on said bond disputing
 the amount of such deficiency, in which event both
 parties may introduce in evidence at the trial, testimony
 of the fair market value of the mortgaged premises at
 the time of the sale under said foreclosure proceedings,
 and the court, sitting with or without a jury, shall
 determine the amount of said deficiency by deducting
 from said debt the amount assessed as the fair market
 value of said premises . . . .

 [L. 1933, c. 82.]

 The 1933 amendment was enacted “[i]n an attempt to deal with the

problem of large deficiency judgments resulting from the almost total collapse

 17
of the real estate market during the Great Depression.” Weinstein, § 39-1.

During that time, “collapsed economic conditions had destroyed all market for

real estate and made it impossible to secure anything beyond a nominal bid at a

judicial sale.” 79-83 Thirteenth Ave., Ltd. v. DeMarco, 44 N.J. 525, 534

(1965). A 1935 amendment, which was “held unconstitutional as applied to

mortgages which antedated the statute,” Weinstein, § 39-1, further explained

that the fair market value credit was a response to a serious public emergency

that had resulted in the “abnormal disruption in economic and financial

processes, the abnormal credit and currency situation in the State and Nation,

the abnormal deflation of real property values and the curtailment of incomes

by unemployment and other adverse conditions,” L. 1935, c. 88.

 After multiple changes to the statutory scheme, see Weinstein, § 39-1

(discussing the statutory history), the statutes in their present form provide that

after the foreclosure of a mortgage, if the foreclosure action fails to generate

“an amount sufficient to satisfy the debt, interest and costs,” the creditor may

bring a deficiency action on the bond or note within three months, N.J.S.A.

2A:50-2 to -2.1.

 It is in response to the creditor’s initiation of the deficiency action that

the debtor

 may file an answer in the action for deficiency,
 disputing the amount of the deficiency sued for. In that
 18
 event both parties may introduce evidence as to the fair
 market value of the mortgaged premises at the time of
 the sale thereof in the foreclosure action, and the court,
 with or without a jury, shall determine the amount of
 such deficiency, by deducting from the debt secured the
 amount determined as the fair market value of the
 premises.

 [N.J.S.A. 2A:50-3 (emphasis added).]

 The history of N.J.S.A. 2A:50-3 supports that the Legislature included

the fair market value credit as a protection for mortgagors in deficiency actions

to use as a shield, not as a sword. See Michael T. Madison, et al., 2 Law of

Real Estate Financing § 12:73 (Dec. 2019). As stated by this Court, N.J.S.A.

2A:50-3 “is indicative of a broad legislative policy that mortgagors should not

be personally liable for more than the difference between [the fair market

value of the property] and the mortgage debt.” DeMarco, 44 N.J. at 535.

Thus, “[a] claim that no personal liability exists, e.g., that the fair market value

of the property exceeds the mortgage debt, is a personal defense which is

properly asserted in the deficiency action.” Citibank, N.A. v. Errico, 251 N.J.

Super. 236, 248 (App. Div. 1991).

 B. Sheriff’s Sale

 The mortgagor is not left without a remedy. The mortgagor may object

to the sheriff’s sale under Rule 4:65-5 and seek a fair market value credit at

that time.
 19
 In DeMarco, the Court addressed whether non-statutory equitable relief

was available to the debtor at a time when N.J.S.A. 2A:50-3 did not include

notes. 44 N.J. at 535. The Court recognized that non-statutory relief was

available but limited it to a fair market value credit by objection to the

sheriff’s sale. Ibid. The Court reasoned that “the evidence can there be

promptly presented in a court of equity and especially since the appropriate

relief may be the ordering of a resale which could not well be done months or

even years later by the law court in the deficiency suit.” Ibid.; see also

Natovitz v. Bay Head Realty Co., 142 N.J. Eq. 456, 464 (E. & A. 1948)

(recognizing that “the mortgagor could have had credit for the fair market

value of the mortgage security in the foreclosure proceeding, if it had chosen

to exercise the right,” but declining to excuse the mortgagor’s “failure to make

timely application for this relief,” which was attributed to the mortgagor’s

“ignorance or dispair”).

 IV.

 A.

 That background is relevant for present purposes, even though certain

mortgages are exempt from the “foreclosure first” rule -- the requirement to

“first foreclose on a mortgage before seeking entry of judgment on a note.”

First Union Nat’l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 351 (2007);

 20
see N.J.S.A. 2A:50-2.3. Specifically, an exemption exists where “the debt

secured is for a business or commercial purpose other than a two-family, three-

family or four-family residence in which the owner or his immediate family

resides.” N.J.S.A. 2A:50-2.3(a). Thus, creditors are not required to follow the

foreclosure-first sequence with respect to commercial property. That

exemption, however, does not prevent the debtor from objecting at a sheriff’s

sale.

 Although commercial mortgages are exempt from the statutorily

required order of proceeding -- and although West Pleasant failed to object to

the sheriff’s sale -- a court may consider equitable, “analogous nonstatutory

relief” in the form of fair market value credit in appropriate circumstances.

See DeMarco, 44 N.J. at 534-35.

 For example, although the statutory scheme does not apply to judgment

creditors, equitable principles grant a court “the inherent power to prevent a

potential double recovery or windfall to the judgment creditor who . . . may

profit on the purchase of the property at the foreclosure sale (if purchased for

less than fair market value), [and] who also seeks to obtain satisfaction of his

judgment.” Morsemere Fed. Sav. & Loan Ass’n v. Nicolaou, 206 N.J. Super.

637, 645 (App. Div. 1986); see also Errico, 251 N.J. Super. at 247.

 21
 But, “in all cases, equity follows the law.” Berg v. Christie, 225 N.J.

245, 280 (2016). “[E]quity will generally conform to established rules and

precedents, and will not change or unsettle rights that are created and defined

by existing legal principles.” Dunkin’ Donuts of Am., Inc. v. Middletown

Donut Corp., 100 N.J. 166, 183 (1985).

 Thus, the legislative purposes of the fair market value credit under

N.J.S.A. 2A:50-3 have informed the Court’s equity jurisdiction where the

statute would not otherwise apply. See DeMarco, 44 N.J. at 534-35; see also

First Union, 190 N.J. at 351 (looking to statutory scheme when analyzing a

commercial loan). Those purposes -- to protect the mortgagor from a large

deficiency judgment and liability for more than the difference between the fair

market value of the property and the mortgage debt -- are not present here.

 New Jersey courts that have equitably applied a fair market value credit,

where statutorily it otherwise would have not applied, have done so when the

creditor is seeking a deficiency judgment. See Errico, 251 N.J. Super. at 240

(involving a suit for a deficiency judgment following a foreclosure);

Morsemere, 206 N.J. Super. at 644 (finding the case was “analogous to that

where a deficiency arises on a note or mortgage”); Resolution Tr. Corp. v.

Berman Indus., Inc., 271 N.J. Super. 56, 63-64 (Law Div. 1993) (involving a

deficiency proceeding); see also Borden v. Cadles of Grassy Meadows II,

 22
LLC, 412 N.J. Super. 567, 584-91 (App. Div. 2010) (canvassing relevant case

law). Courts in other states have done likewise. See, e.g., Key Bank of Maine

v. Holman, 657 A.2d 775, 776 (Me. 1995) (holding that the mortgagor was not

entitled to a fair market value credit where the mortgagee did not seek a

deficiency judgment because a fair market value credit applies only where “(1)

the mortgagee is the purchaser at the public sale and (2) the mortgagee seeks a

deficiency judgment” (emphasis added)).

 The Appellate Division’s decision in MMU of N.Y., Inc. v. Grieser, 415

N.J. Super. 37 (App. Div. 2010), on which West Pleasant relies, is

distinguishable. The creditor in Grieser had sold the property to a third party

without crediting the sale price to the deficiency owed by the debtor; the

creditor had also continued to pursue the debtor following the sale of the

property by executing on six other properties owned by the debtor. 415 N.J.

Super. at 41. In that case, the Appellate Division applied equitable principles

and held that the debtor was entitled to a fair market value credit. The

creditor’s continued pursuit of recovery against the debtor distinguishes that

case from these circumstances. 3

3
 To the extent that the Appellate Division here relied on Brunswick Bank &
Trust v. Heln Management LLC, 453 N.J. Super. 324 (App. Div. 2018), we
find that case of no help to West Pleasant’s position. In that matter, the
debtors actively sought to stay foreclosure proceedings being pursued by the

 23
 B.

 Here, U.S. Home has not sought a deficiency judgment against West

Pleasant or pursued West Pleasant for collection in other ways. U.S. Home

conceded at oral argument that it has waived its judgment against West

Pleasant “because of the passage of time and because of the position that U.S.

Home has taken throughout this litigation that they’re not pursuing the

deficiency judgment.” 4

 In this action in which West Pleasant seeks equitable relief, the position

of U.S. Home must be viewed with clear eyes. After the bankruptcy

proceedings ended and the automatic stays were lifted, the foreclosure

processes recommenced. The judgment owed U.S. Home remained unpaid.

And, U.S. Home now had, in hand, bankruptcy-court-approved appraisals

showing that the properties, in combination, did not exceed the amount of the

creditor on numerous properties, raising in those settings the issue of
overcollateralization and a request for credit. 453 N.J. Super. at 328-29. The
debtors’ objections to allowing the foreclosure and sheriff’s sales to proceed
place those circumstances in contrast to what occurred here. Moreover, even
there, the Appellate Division rejected any claim to require a money judgment
to debtors if the fair market value of property purchased by the creditor at
sheriff’s sale exceeded the shortfall owed on the debt. Id. at 333 & n.9.
4
 In explaining its reasons for not pursuing a deficiency judgment, U.S. Home
cited a desire to end dealings with litigious adversaries and to not “throw good
money after bad.”

 24
unsatisfied judgment. They also had, in hand, the Consent Order with West

Pleasant in which West Pleasant waived any claim to fair market value credit

on the West Pleasant Property.

 There is no fault to be found in U.S. Home’s proceeding to the sheriff’s

sales and obtaining the properties with nominal bids when no one else bid.

Nor can fault be found in the decision to go forward by executing first on the

Four G Property. It was appraised at the higher amount of $806,000 and

represented the bulk of the combined value of the two properties, the West

Pleasant Property having been appraised as having a fair market value of

$412,500. Even in combination, those appraisals did not cover the amount

owed on the debt. The sheriff’s sales concluded without any objection ever

having been raised by either Four G or West Pleasant. In sum, U.S. Home did

nothing untoward in proceeding as it did to obtain the Four G and West

Pleasant properties. 5

5
 The Appellate Division, relying on Brunswick Bank, mistakenly concluded
that U.S. Home’s purchase of the West Pleasant Property satisfied its
judgment. That could not be correct because U.S. Home purchased the West
Pleasant Property second-in-time. Under the reasoning of Brunswick Bank --
and if this matter had a deficiency-action setting or like ongoing collection
activity on the debt generated by the creditor -- the only issue to be considered
following the sale of the Four G Property would be whether U.S. Home could
proceed against the West Pleasant Property. However, as the Appellate
Division recognized, West Pleasant waived, under the Consent Order, any
right to challenge the sheriff’s sale or seek a fair market value credit on that
property.
 25
 All that took place months before the instant complaint was filed and

without any deficiency claim being pursued by U.S. Home. This remarkable

proceeding in which a debtor brought an after-the-fact affirmative claim for

fair market value and obtained a money judgment against the creditor is as

unprecedented and unwarranted as it was argued to be. Cf. Evergreen Bank v.

D & P Justin’s, Inc., 544 N.Y.S.2d 244, 246 (App. Div. 1989) (reversing the

portion of a trial court decision that had “mistakenly employed the fair and

reasonable market value rule, available as a shield for the protection of the

mortgagor under [the relevant New York statute] where the premises are sold

for less than market value, as a sword in [a] surplus money proceeding so as to

create surplus moneys when none in fact exist” and noting that, “[h]ad [the]

defendants felt the sale price of [the parcel] to be inadequate, their remedy was

to move to set aside the sale”).

 Public policy generally favors finality in the foreclosure process. A

debtor has the ability to seek a fair market value credit by objecting to the

sheriff’s sale. After the time for objecting to the sheriff’s sale has passed,

unless a deficiency action or other collection activity is pursued, later claims

for fair market value credit should not be permitted to generate endless

litigation. The amicus cautions that the later and affirmative litigation use of

fair market value credit -- to support after-the-fact suits for money damages by

 26
debtors when the foreclosure process has been completed and deficiency

actions are not pursued -- would have the untoward consequence of unsettling

the stability and predictability of lending and equity markets involved in

commercial real estate. Amicus advises that such a step would cause negative

repercussions for lenders and borrowers alike.

 The instant use of fair market value credit, approved here in the

judgment under review, far exceeds the prior equitable applications that

furthered the legislative purpose to fair market value credit recognized by the

statutory scheme. And prior to filing this affirmative claim, both Four G and

West Pleasant had the ability to advance a fair market value objection during

the sheriff’s sales proceedings under Rule 4:65-5, but West Pleasant waived

that option in the Consent Order and Four G failed to object. We decline to

expand the equitable application of fair market value credit to permit the

affirmative relief that was awarded here.

 V.

 The judgment of the Appellate Division is reversed. The matter is

remanded for entry of a judgment declaring the debt satisfied, as conceded by

U.S. Home, and dismissing the claim for compensatory damages.

 27
 CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON,
FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE
LaVECCHIA’s opinion.

 28